**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2864
_____

In re:  JEFFREY J. PROSSER,
                                                        Debtor


JAMES P. CARROLL, Chapter 7 Trustee of
the Bankruptcy Estate of Jeffrey J. Prosser

v.

DAWN PROSSER,
                                        Appellant
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. Civil No. 3-08-cv-00147)
District Judge: Honorable Juan R. Sanchez
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 24, 2013

Before:   McKEE, *Chief Judge*, SCIRICA and VANASKIE, *Circuit Judges.*

(Filed: August 1, 2013)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Appellant Dawn Prosser appeals from a judgment of the District Court entered upon a jury verdict against her and in favor of James Carroll, the Chapter 7 Trustee of the bankruptcy estate of Jeffrey J. Prosser. Appellant challenges the District Court's denial of her motions to dismiss and for judgment as a matter of law, argues the District Court erroneously allowed recovery for transfers of property made more than two years before the bankruptcy petition was filed, and that Trustee Carroll failed to prove the post-petition transfers were out of the ordinary course of business. Finding no error, we will affirm.

## I.

Because we write primarily for the parties, who are familiar with the background of this case, we set forth only those facts necessary to our analysis. In January 2006, the Delaware Chancery Court found Jeffrey Prosser, Appellant's husband, jointly and severally liable for $56,341,843 ("the Greenlight judgment") for his fraudulent acquisition of the outstanding public stock of the predecessor corporation to Innovative Communication Corporation ("New ICC"). Mr. Prosser subsequently filed a Chapter 11 bankruptcy petition. The Bankruptcy Court later converted the case from Chapter 11 to Chapter 7 and appointed James Carroll as the Chapter 7 Trustee for Prosser's estate.

From the time the lawsuits that culminated in the Greenlight judgment were pending until after he filed his bankruptcy petition, Mr. Prosser acquired and transferred millions of dollars of real and personal property to Appellant, including collections of artwork, expensive cigars, fine wine, and valuable jewelry. During this period, Mr.

Prosser also made millions of dollars of improvements to the couple's main residence, the Estate Shoys. The couple maintained that Jeffrey Prosser gifted the property to Appellant.

Seeking to recover the money they were awarded, the Greenlight judgment creditors filed an involuntary Chapter 11 bankruptcy petition against New ICC. The Chapter 11 trustee, later joined by Trustee Carroll, commenced proceedings against members of the Prosser family in the Bankruptcy Court, seeking turnover of the property Jeffrey Prosser had gifted to Appellant on the theory that there had been no legal transfer of ownership (the "Turnover Action"). The trustees argued that, because Jeffrey Prosser retained ownership, the property belonged to his bankruptcy estate.

After the Turnover Action was filed but before it was tried, Trustee Carroll filed a complaint against Appellant in Bankruptcy Court, asserting that, to the extent that she owned the gifted property, she acquired ownership through fraudulent transfers from her husband which, the Trustee alleged, were designed to shield the substantial income the husband was taking from New ICC (the "Fraudulent Transfer Action"). On December 5, 2008, Appellant successfully obtained a withdrawal of the reference to the Bankruptcy Court, and the matter proceeded in the District Court.

On February 9, 2011, the Bankruptcy Court issued an order in the Turnover Action, resolving Jeffrey Prosser's and Appellant's respective ownership of the contested property. *See In re Prosser*, Nos. 06-30009, 07-30012, 2011 WL 576068 (Bankr. D. V.I.,

3

Feb. 9, 2011). Based on its findings, the Bankruptcy Court ordered that all of Jeffrey Prosser's interest in the property be turned over to the estate. *Id.* at *53.

Subsequently, on May 23, 2011, Appellant filed a motion to dismiss the Fraudulent Transfer Action, claiming that Carroll had already tried the fraudulent transfer issues in the Turnover Action and was thus precluded from re-litigating them. The District Court denied the motion.

On June 6, 2011, the parties tried the Fraudulent Transfer Action before a jury. On June 8, 2011, Appellant moved to dismiss the action, arguing that the trustees did not adduce proof of actual intent by Mr. Prosser to hinder, delay, or defraud creditors through the transfer of assets. The District Court denied the motion, and the jury returned a verdict finding that the transfers were fraudulent.

Appellant filed a post-verdict Rule 50(b) motion for judgment as a matter of law, arguing Trustee Carroll failed to prove that the transfers were fraudulent because he did not present sufficient evidence that Mr. Prosser owned the transferred assets, or that Mr. Prosser was insolvent at the time of transfers. On June 6, 2012, the District Court denied Appellant's Rule 50(b) motion, holding that Appellant had waived the issues, and that, even if she had preserved them, they nevertheless failed on the merits.

II.

The District Court had jurisdiction pursuant to 48 U.S.C. § 1612(a) and 28 U.S.C. § 1334, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review is mixed: we review a district court's legal conclusions de novo, and review a district

4

court's factual findings for clear error. *United States v. Reynolds*, 710 F.3d 498, 506 (3d Cir. 2013).

### A. The Motion to Dismiss

Appellant advances four theories in support of her argument that the District Court erred in denying her pretrial motion to dismiss. Specifically, she asserts that this case is barred by the doctrines of collateral estoppel, judicial estoppel, and election of remedies, and that, by allowing Trustee Carroll to pursue relief under multiple statutes for the same set of facts, the District Court rendered the statutes "redundant and superfluous." (Appellant's Br. 58.) Her arguments under each theory lack merit.

First, as to her collateral estoppel theory, the District Court determined that the Bankruptcy Court's ruling in the Turnover Action had no preclusive effect on this case because the elements of collateral estoppel were not met. Collateral estoppel bars re-litigation of an issue where: "(1) the issue sought to be precluded [is] the same as that involved in a prior action; (2) that issue [was] actually litigated; (3) it [was] determined to be a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Peloro v. United States*, 488 F.3d 163, 174-75 (3d Cir. 2007) (internal quotation omitted).

Appellant argues that the Turnover Action barred the Fraudulent Transfer Action because both actions arose out of the same "nucleus of facts." (Appellant's Br. 22, 33.) That assertion, however, is not germane to collateral estoppel analysis, which focuses not on whether the *facts* underlying the cases are the same, but instead on whether the same

5

*issue* has been conclusively determined in a prior decision. Here, the issues decided in each case were different. Specifically, the issue decided by the Bankruptcy Court in the Turnover Action was whether Jeffrey Prosser retained ownership of the property he attempted to transfer to Appellant. To the extent it determined that Jeffrey Prosser retained ownership interests in the property, the Bankruptcy Court required his interest to be turned over to the bankruptcy estate. In contrast, the issue in this case was whether Appellant's ownership interests resulted from a fraudulent conveyance from Jeffrey Prosser. Thus, although the same factual scenario gave rise to the two actions, the issues decided in each were entirely distinct. Indeed, as the District Court observed in its denial of Appellant's motion to dismiss, the Turnover Opinion is replete with the Bankruptcy Court's explicit avoidance of any issue related to the alleged fraudulent nature of Jeffrey Prosser's transfers.[1] We therefore reject Appellant's argument that the Bankruptcy Court analyzed the fraudulent nature of the transfers to her, and conclude that the District Court correctly held that collateral estoppel did not preclude the Fraudulent Transfer Action.

We also reject Appellant's second theory that Trustee Carroll is judicially estopped from pursuing the Fraudulent Transfer Action. Judicial estoppel is an equitable doctrine, which courts may apply at their discretion "to prevent a litigant from asserting a

---

[1] *See, e.g.*, *In re Prosser*, 2011 WL 576068, at *6 n.41 ("[T]his adversary proceeding is not to determine whether property was fraudulently conveyed . . ."); *id.* at *13 n.56 ("offer[ing] no opinion" on whether transfers to Dawn Prosser were fraudulent); *id.* at *36 n.129 ("[This] turnover action is not appropriate for resolving . . . allegations [of fraud]. The Chapter 11 Trustee has the opportunity to prove the propriety and alleged fraudulent nature of the transfers in the fraudulent conveyance actions . . ."); *id.* at *52 ("This Opinion preserves and reserves all rulings regarding fraudulent conveyances.").

6

position inconsistent with one that she has previously asserted in the same or in a previous proceeding." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 359 (3d Cir. 1996). However, judicial estoppel is "not intended to eliminate all inconsistencies no matter how slight or inadvertent." *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010). Thus, we have held that a party's purportedly inconsistent litigation positions should be judicially estopped only if they meet the following criteria:

> First, the party to be estopped must have taken two positions that are *irreconcilably inconsistent*. Second, judicial estoppel is unwarranted unless the party *changed his or her position in bad faith*—i.e., with the intent to play fast and loose with the court. Finally, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and *no lesser sanction would adequately remedy the damage* done by the litigant's misconduct.

*Id.* (quoting *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779 (3d Cir. 2001)).

Here, Trustee Carroll merely plead alternative theories in the Turnover and Fraudulent Transfer Actions. Such alternative pleading, which is explicitly permitted by Federal Rule of Civil Procedure 8(d), is not barred by judicial estoppel. *See Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993). Furthermore, the alternative theories were not "irreconcilably inconsistent." *Kane*, 628 F.3d at 638. Instead, they allowed the estate to recover under one theory the property that belonged to Jeffrey Prosser, and to recover under another theory the property that was in Appellant's possession by way of Jeffrey Prosser's fraudulent transfers. Additionally, although Trustee Carroll argued in the Turnover Action that Appellant did not own the transferred

7

property, but later acknowledged her ownership in the Fraudulent Transfer Action, this change in position was not made in bad faith. Instead, Trustee Carroll simply conceded the Bankruptcy Court's conclusions as to ownership, thereby ensuring that there was no double recovery by the estate.[2] Thus, neither of the first two elements of judicial estoppel is met in this case. Accordingly, we find no error in the District Court's denial of Appellant's motion to dismiss on the ground of judicial estoppel.

We likewise reject Appellant's third theory premised upon the election of remedies doctrine, which seeks to prevent a party from "occupy[ing] inconsistent positions in relation to the facts which form the basis of his respective remedies." *Abdallah v. Abdallah*, 359 F.2d 170, 174 (3d Cir. 1966). As with judicial estoppel, the election of remedies doctrine does not prevent a party from pleading in the alternative. Furthermore, Trustee Carroll, along with the Bankruptcy and District Courts, took pains to ensure that the theories advanced in each action did not result in a double recovery. We therefore agree with the District Court that the election of remedies doctrine does not bar the Fraudulent Conveyance Action.

---

[2] Contrary to Appellant's repeated suggestions, the bankruptcy estate was not awarded a double recovery of the couple's respective interests in the Estate Shoys. In the Turnover Action, evidence that Jeffrey Prosser resided at the Estate Shoys and paid for extensive improvements to the property was used to determine that he retained an ownership interest in the property notwithstanding his representations that it was owned solely by Appellant. As a result, the bankruptcy estate was awarded Jeffrey Prosser's 50% interest in the Estate Shoys, which included his 50% interest in the improvements made to the property. In the Fraudulent Transfer Action, Trustee Carroll sought and recovered only *Appellant's* 50% interest in the value of the improvements to the Estate Shoys. Therefore, there was no double recovery.

We also reject Appellant's argument that, by permitting the trustees to pursue relief against Jeffrey Prosser and Appellant under numerous statutes, the District Court rendered the statutes "redundant and superfluous." (Appellant's Br. 58.) Congress chose to authorize various types of relief for trustees seeking to recover assets for distribution to creditors under the Bankruptcy Code. *See*, *e.g.*, 11 U.S.C. §§ 542, 547, 548, 549, and 550. The fact that Jeffrey Prosser's actions violated several provisions of the Bankruptcy Code does not render those provisions superfluous.

## C. The Motion for Judgment as a Matter of Law

In her motion pursuant to Federal Rule of Civil Procedure 50(b), Appellant argued that Trustee Carroll failed to prove that Jeffrey Prosser owned the property he transferred and that Jeffrey Prosser was insolvent. The District Court held that Appellant waived these arguments. We agree.

A party may move for judgment as a matter of law "at any time *before* the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2) (emphasis added). If the court denies the pre-verdict motion, the movant may renew her motion within twenty-eight days after the entry of judgment. Fed. R. Civ. P. 50(b). "Since the post-submission motion is nothing more than a renewal of the earlier motion," however, the party may not raise any new issue that she did not raise in her pre-verdict motion. 9B Charles Wright & Arthur Miller, Federal Practice & Procedure § 2537 (3d ed. 2013); *see also Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976, 993 (3d Cir. 1996).

Appellant's pre-verdict motion failed to assert either of the grounds raised in her renewed motion. Specifically, the pre-verdict Rule 50 motion did not argue that Trustee Carroll failed to prove that Jeffrey Prosser owned the property he transferred to her. Instead, Appellant argued only that Jeffrey Prosser did not have the requisite intent to hinder, delay, or defraud his creditors. Thus, the District Court did not err in finding she waived the ownership argument.

Appellant's argument that Trustee Carroll failed to prove her husband was insolvent is similarly waived, because her pre-verdict motion raised only New ICC's solvency. Appellant argues her husband's solvency was dependent on the solvency of New ICC, but Rule 50(a) requires a motion to "specify the judgment sought and the law and facts that entitle the movant to judgment." Fed. R. Civ. P. 50(a)(2). Thus, even if New ICC's solvency was relevant to Jeffrey Prosser's personal solvency, or vice versa, we read Rule 50 as requiring a higher degree of specificity. *Cf. In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009) (observing, in waiver context, that a "fleeting reference or vague allusion to an issue" is insufficient to preserve it for appeal). Furthermore, as the District Court extensively discussed in its Memorandum denying Appellant's post-submission motion to dismiss, insolvency is not a necessary element of the fraudulent transfer claims. *Carroll v. Prosser*, Civil Action No. 08-147, 2012 WL 2053868, at *3 (D.V.I. June 6, 2012). Thus, even if Appellant had not waived her argument that Trustee Carroll failed to prove her husband's insolvency, it would nevertheless fail as a matter of law.

10

D. Issues Raised for the First Time on Appeal

Finally, Appellant argues that the District Court erred as a matter of law by awarding recovery for transfers made by Jeffrey Prosser more than two years before he filed the voluntary Chapter 11 petition, and that Trustee Carroll failed to prove that Jeffrey Prosser's post-petition transfers were not made "in the ordinary course" of business. She failed, however, to raise either issue before the District Court. We need not consider issues that are raised for the first time on appeal absent "exceptional circumstances." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 261. Appellant cannot identify a single instance in the record where she preserved either issue for appellate review. Thus, they are waived.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.

11